## Edwin Wynn v. Arthur A. Taylor, Receiver.

1. STATUTES—*Section 9, Chapter 51, R. S., in Regard to Producing Books or Writings in Evidence, Construed.*—Unless a showing is made upon good and sufficient cause, that the evidence sought, or that the books and papers required to be produced, contain evidence pertinent to the issue on behalf of the party applying therefor, the application to the court to compel the production of books or writings under section 9, chapter 51, R. S., should be denied.

2. SAME—*Purpose of the Statute Giving Court Power to Require Production of Books and Writings.*—The statute giving courts power to require the production of books and writings into court was not only intended to avoid the necessity of a bill for discovery, but to broaden the powers of a chancery court and simplify the procedure.

3. CHANCERY PRACTICE—*Chancery Practice in Regard to the Production of Books and Papers.*—By the original chancery practice, an interrogatory or interrogatories, more or less specific, according to the plaintiff's choice, were inserted in the bill asking the defendant whether he had any documents, or such and such particular documents, in his possession. If his answer admitted his possession of material documents, an order was made, on the plaintiff's motion, for their production, so that they might be inspected. Under the recent practice the defendant's admissions are made in his answer to interrogatories filed, or in his affidavit made in reply to the plaintiff's motion.

4. SAME—*Limitations to Right to Discovery.*—The right to discovery is in all cases limited by the purpose with reference to which alone it is conferred and not in any case extended beyond the exigencies of the particular case about to be tried. If the defense be such as to raise an issue in law only, as by demurrer, the plaintiff will not be entitled to any discovery. As this mode of defense admits the plaintiff's statement of his case, no discovery will be wanted for the trial.

5. PRACTICE—*Proper Procedure to Obtain Evidence in Other Party's*

*Possession.*—When it is desired to get evidence to establish a complainant's alleged right, whether under the statute or by the practice in chancery, an issue either of law or fact should first be made, and the evidence should be shown to be pertinent to that issue. The court should also be able to see that the application is not made for any improper or ulterior purpose, and that the evidence is not to be used in other suits or prosecutions.

**Bill for the Dissolution of a Corporation.**—Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1902. Reversed. Opinion filed October 8, 1903.

**Statement by the Court.**—The Columbia Hardwood Co., a judgment creditor of the National Stone Co., a corporation, filed a bill under section 25 of the corporation act, against the corporation, appellant and others, alleging, among other things, that appellant had, at the filing thereof, in his possession or control, assets of the Stone Company, and praying the appointment of a receiver to close up its affairs, a dissolution of the corporation, a sale of its assets to pay said judgment and other creditors, and for other relief. A receiver was appointed, with the usual powers of a receiver in chancery, who qualified, and afterward filed a petition which alleges, on information and belief, that appellant, as secretary and treasurer of the Stone Co., at the time of the filing of the petition, had in his possession a large amount of real and personal property of said Stone Co., in which he had no interest, and praying the petition be referred to a master for a hearing, and that he be directed to appear before the master and submit to an examination with respect to all matters referred to in the petition, and that he be required to show what property of the Stone Co. he had in his possession. Without notice to appellant the petition was referred to a master and appellant was, in the same order, directed to appear before the master for examination under oath touching the matters set forth in the petition. He moved the court to set aside the order of reference, but the motion was denied. He also submitted to an examination before the master, where, among other things, he testified that the firm of

Wynn & Co., of which he was a member, made a contract with the Stone Co. to sell $47,000 of its bonds, and were to receive therefor ten per cent commission; that Wynn & Co. sold at par that amount of bonds for the Stone Co. and turned over the proceeds to the latter company; that a statement in full of this transaction was made by Wynn & Co., accepted by the Stone Co. in November, 1900, and it now has that statement; that the books of Wynn & Co. show some, though not all, of this transaction, but witness could not state exactly what part was shown and what was not shown.

After the said examination the court ordered appellant, there having been no service of process on him and he not having answered nor been ruled to answer either the bill or petition of the receiver, to produce before the master all books, papers and documents of every kind in his possession, custody or control, which had any reference to or were in anywise connected with any property or property rights of the Stone Co., or the proceeds of any sale of the same by Wynn. He refused to comply with this order, whereupon the court ruled him to show cause why he should not be punished for contempt for disobeying the order of the court, and in refusing to comply with the direction of a *subpœna duces tecum* to the same effect as said order which was served upon him. Appellant made a sworn answer in writing to the rule, from which it appears, among other things not material on this appeal, that the only property of the Stone Co. in his possession was twenty-three bonds which he had been enjoined from disposing of by order of the Circuit Court; that the bill in this cause was being prosecuted by one White for the purpose of wrecking the Stone Co., and that the examination of appellant before the master was being conducted solely in the interests of said White, who paid the expenses thereof, and for the only purpose of procuring from Wynn evidence which White would be able to use against Wynn in law suits then pending between them. After this answer, and without any other or further showing than above

stated, the chancellor found Wynn guilty of contempt for refusing to produce before the master, as ordered, said books, papers and documents, and ordered him committed to the jail of Cook county until he should comply with said order and subpœna, or until otherwise discharged by due process of law. From this order of commitment this appeal was taken.

Gilbert & Fell, attorneys for appellant.

One charged with contempt of court in refusing to obey an order or a writ of *subpœna duces tecum*, may acquit himself by showing that it is a nullity. Tolman v. Jones, 114 Ill. 147; Leopold v. The People, 140 Ill. 552; Lester v. The People, 150 Ill. 408; People v. Weigley, 155 Ill. 501; Bentley v. The People, 107 Ill. App. 245.

A *subpœna duces tecum* issued, or an order entered, requiring a person to produce books or writings in his possession, is void unless it is first made to appear, by affidavit, that the books or writings contain something pertinent or material to the matter undergoing investigation. Section 9, Chapter 51 of Volume 2, Starr and Curtis' Annotated Statutes, p. 1842; First National Bank v. Mansfield, 48 Ill. 494; Lester v. The People, 150 Ill. 408; Bentley v. The People, 107 Ill. App. 245.

Gilbert & Gilbert, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

The question presented is whether on this record appellant could be required to produce before the master the books of account of Wynn & Co.

From the statement it will be seen there was no attempt to comply with the statute (Hurd), Sec. 9, Chap. 51 of the Evidence act of this state, which is, viz. :

" The several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue."

In the case of Meeth v. Rankin Brick Co., 48 Ill. App. 606 (3d Dist.), it was held, construing this statute, that an affidavit was required to show that books sought to be produced contained evidence ": pertinent to the issue." In Lester v. People, 150 Ill. 408–18, in which the same statute was construed, the court said :

"Unless a showing is made, upon good and sufficient cause, that the evidence sought, or that the books and papers required to be produced, contain evidence pertinent to the issue on behalf of the party applying therefor, the application should be denied."

To the same effect is First Nat. Bank v. Mansfield, 48 Ill. 494. No formal affidavit was made—only the sworn testimony of appellant was before the court (if that may be called an affidavit, which it is unnecessary for us to decide and we do not decide), and no issue was formed either upon the bill or the petition of the receiver. There being no issue before the master or the court, as is clearly contemplated by the statute, there only remains to be considered the claim of appellee's counsel that the court, under its general chancery powers, could rightfully compel appellant to produce his books. No adjudicated case deciding this exact question has been cited by counsel, nor have we, in the time at our disposal, been able to find such a case. All the cases cited are where there was an issue before the court or a decree had already passed, excepting the case of Bentley v. People, decided in this court, 104 Ill. App. 353, where there was an investigation before a grand jury. The question as to whether or not there should be an issue did not arise, and was not decided in that case. The case of Leopold v. People, 140 Ill. 552, relied on by appellee, does not decide the question, but only that the defendant in a bill filed to settle a partnership, who entered his appearance, consented to the appointment of a receiver and admitted the partnership, should submit to an examination before the master in reference to the copartnership property.

In People v. Western Mfrs. M. Ins. Co., 40 Ill. App. 428, it was said that the statute was intended to obviate the necessity of a bill of discovery.

In the Meeth case, *supra*, the court said the power "should be used with circumspection lest it be abused," and that the court should be able to see, from the showing made, that "the application is made for no improper or ulterior purpose." In the Lester case, *supra*, it was said that the statute did not give this right "with a view to find evidence to be used in other suits or prosecutions." We think the statute was not only intended to avoid the necessity of a bill for discovery, but to broaden the powers of a chancery court and simplify the proceeding. The practice in chancery in this regard is thus stated by Mr. Pomeroy in his Equity Jurisprudence, Sec. 205, note 2:

" By the original chancery practice, an interrogatory or interrogatories, more or less specific, according to the plaintiff's choice, are inserted in the bill, asking the defendant whether he has any documents, or such and such particular documents, in his possession. If his answer admits his possession of material documents, an order is made, on the plaintiff's motion, for their production, so that they may be inspected. Under the more recent practice the defendant's admissions are made in his answer to interrogatories filed, or in his affidavit made in reply to the plaintiff's motion."

The author further says:

" It is well settled that the matter of the production and inspection of documents depends upon the same principles and doctrines which govern discovery in general."

In Wigram on the Law of Discovery, in speaking of the rules of pleading in equity as bearing on discovery, the author (*p. 32) says:

" The object of a court of equity in compelling discovery, is only to enable itself or some other court to decide on matters in dispute between the parties. The right to discovery, therefore, is in all cases limited by the purpose with reference to which alone it is conferred, and will not in any case extend beyond the exigencies of the particular case about to be tried. * * * By these rules, if the defense be such as to raise an issue in law only (as by demurrer) the plaintiff will not be entitled to any discovery. * * * As this mode of defense admits the plaintiff's statement of his case, no discovery will be wanted for the trial."

The author in the same connection proceeds to state the effect in case the defendant should plead or answer, namely, to confine the discovery to the issue or issues presented by such plea or answer. It would, therefore, seem that when it is desired to get evidence to establish a complainant's alleged right, whether under the statute or by the practice in chancery, an issue, either of law or fact, should first be made, and the evidence should be shown to be pertinent to that issue. The court should also be able to see that the application was not made for any improper or ulterior purpose, and that the evidence was not to be used in other suits or prosecutions. When by a demurrer or otherwise the defendant admits what the complainant seeks, all expense and uncertainty are avoided. We think the better practice is to await, or at least to require, an issue to be made by the pleadings before ordering the production of books claimed to be pertinent to a complainant's case. Because there was no issue before the court, nor any effort to require one, we are of opinion the learned chancellor erred in making the order of commitment in question, and it is therefore reversed.